UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANINE CLAIR JONES,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 14-cv-05417 BHS-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: January 2, 2015

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. Nos. 18, 19, 20).

After considering and reviewing the record, the Court concludes that the ALJ failed to evaluate the medical evidence properly by failing to indicate why an opinion from an examining doctor was not included into plaintiff's residual functional capacity

("RFC"). The ALJ also failed to provide legitimate reasons supported by substantial evidence in the record for failing to credit opinions from another examining doctor regarding plaintiff's social limitations. Because these errors are not harmless, this matter should be reversed and remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, JANINE CLAIR JONES, was born in 1981 and was 28 years old on the amended alleged date of disability onset of March 1, 2010 (*see* AR. 37, 59, 201-02, 203-09). Plaintiff completed high school and attended college but does not have a degree (AR. 61). Plaintiff has work experience as a barista and nuts and seeds roaster, a healthcare patient account representative, a stocker, a cashier, a receptionist and as a childcare assistant in a daycare (AR. 237-48). Plaintiff's last job as a barista ended when she was not able to get to work on time (AR. 69).

According to the ALJ, plaintiff has at least the severe impairments of "major depressive disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 39).

In February, 2011, plaintiff was single and living in an apartment in Olympia with seven other people (AR. 339, 420).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

following reconsideration (*see* AR. 77-83, 84-90, 93-100, 101-08). Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on January 30, 2013 (*see* AR. 56-74). On February 7, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 34-51).

On March 21, 2014, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (AR. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in May, 2014 (*see* Dkt. Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("AR.") on August 18, 2014 (*see* Dkt. Nos. 13, 14).

Defendant summarizes the issues raised by plaintiff in her opening brief as follows: (1) Whether or not the ALJ gave legally adequate reasons for finding plaintiff not entirely credible; (2) Whether or not the ALJ properly considered the opinions of Richard Coder, Ph.D., Brett Trowbridge, Ph.D. and Terilee Wingate, Ph.D.; (3) Whether or not the ALJ harmfully erred in failing to adequately discuss plaintiff's obesity; and (4) Whether or not the ALJ presented a valid RFC assessment to the vocational expert (*see* Dkt. No. 19, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### (1) **Whether or not the ALJ properly considered the opinions of Richard Coder, Ph.D., Brett Trowbridge, Ph.D. and Terilee Wingate, Ph.D.**

Here, as summarized by defendant, when "considering the medical opinion evidence, the ALJ gave significant weight to the opinion of Dr. Coder, some weight to the opinion of Dr. Trowbridge, and some weight to the opinion of Dr. Wingate[; h]owever, the ALJ . . . . rejected the more significant limitations assessed by Dr. Trowbridge" (Dkt. 19, p. 8). Although defendant contends that the ALJ provided specific and legitimate reasons for resolving the evidence this way, the Court notes that despite giving significant weight to the opinion of Dr. Coder, the ALJ failed to explain why one of the opinions from Dr. Coder was not accommodated into plaintiff's RFC.

Because the Court concludes that this error is not harmless, as discussed below, the Court concludes that this matter should be reversed and remanded for further administrative proceedings.

A contradicted opinion from an examining or treating doctor can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Richard Coder, Ph.D., examined and evaluated plaintiff on February 19, 2011 (*see* AR. 338–43). Dr. Coder reviewed numerous records and noted that plaintiff at the

time was taking Citalopram for depression (*see* AR. 338 – 39). Dr. Coder noted that plaintiff "was obese for her height" (AR. 339). Dr. Coder observed that plaintiff's eye contact was minimal and opined that her affect was flat (*see id.*). During his mental status examination ("MSE"), Dr. Coder observed that although plaintiff's stream of mental activity was within normal limits, "she was sometimes slow to respond to questions" (AR. 340). Similarly, although Dr. Coder indicated that plaintiff's velocity's speech was normal, the volume of her speech was low (*see id.*). Dr. Coder noted that plaintiff reported that her mood was tired and anxious, and he opined that her "affect was consistent with stated mood [and] she appeared to have low energy" (*see id*.). Dr. Coder noted that plaintiff "occasionally became teary–eyed during the interview" (*see id.*).

Regarding plaintiff's intellectual functioning, Dr. Coder observed during testing that plaintiff's "intellectual functioning appeared to be within the average range," and that her recent and remote memory were intact (*see id.*). Dr. Coder reported plaintiff's ability to conduct serial seven calculations accurately and to perform a simple three step command successfully (*see* AR. 341). Regarding her concentration, persistence and pace, Dr. Coder noted various activities that plaintiff reported being able to conduct for an hour such as knitting, walking, laundry, and working on the computer (*see id.*). He noted that she reported that she could read for more than an hour (*see id.*).

Dr. Coder indicated that there did not "appear to be any inconsistencies throughout the evaluation" (AR. 342). In his medical source statement, Dr. Coder indicated that plaintiff's ability to reason, her understanding and her judgment were good (*see id.*). Dr. Coder also indicated that plaintiff's ability to follow complex instruction also was good,

as was her memory functions and sustain concentration and persistence (*see id.*). He also indicated that plaintiff's social interaction and interpersonal relationships were good (AR. 343). However, despite noting plaintiff's various good levels of functioning, Dr. Coder opined that plaintiff's "ability to adapt to routine changes is likely to be impacted by reported depressed mood, anxiety, feelings of being overwhelmed, and low energy" (*see id.*).

In his written decision, the ALJ discussed the opinion of Dr. Coder, although he referred to him as Dr. Cooper (*see* AR. 343–44). Despite noting that Dr. Coder opined that plaintiff's "ability to adapt to routine changes is likely to be impacted by reported depressed mood, anxiety, feelings of being overwhelmed, and low energy," the ALJ provided no reason for failing to include this opinion into plaintiff's RFC (*see* AR. 43-44, 343). In fact, the ALJ indicated his finding that the opinion from Dr. Coder "is consistent with the claimant's longitudinal record as well as the claimant's reported activities" (*see* AR. 43). Despite providing rationale for failing to credit fully the global assessment of functioning ("GAF") score of 45 assigned by Dr. Coder, the ALJ failed to specify why the opinion regarding adaptability to routine changes was not included in the RFC (*see* AR. 43-44). Although the ALJ noted various intact abilities by plaintiff, Dr. Coder also noted these intact abilities, yet nevertheless provided the specific opinion regarding plaintiff's limitation in her ability to adapt to routine changes in the work environment (*see* AR. 342–43). In addition, in contrast to the ALJ's finding that plaintiff's subjective complaints of symptoms were not fully credible, Dr. Coder specifically opined that plaintiff "appeared to respond to questions in an open and honest manner, [and that there]

did not appear to be any evidence of [plaintiff] exaggerating symptoms, nor did there appear to be any inconsistencies throughout the evaluation" (AR. 342). Furthermore, Dr. Coder supported his assessment of plaintiff's depressed mood, anxiety and low energy by his specific observations during his examination, noting that plaintiff's eye contact was minimal and her affect was flat (AR. 339); that "she was sometimes slow to respond to questions" and that the volume of her speech was low; that her affect was consistent with her stated mood of being tired and anxious and that she appeared to have low energy;" and that plaintiff "occasionally became teary–eyed during the interview" (AR. 340).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the

lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

In addition, the Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id*. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

For the reasons stated, and based on the record as a whole, the Court concludes that the ALJ failed to explain why his opinions are more correct than those of the examining doctor who specializes in psychology. *See Reddick*, *supra*, 157 F.3d at 725 (*citing Embrey*, *supra*, 849 F.2d at 421-22); *see also Blankenship*, *supra*, 874 F.2d at 1121. The ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for his failure to credit fully this opinion from Dr. Coder. *See Lester*, *supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043; *Murray*, *supra*, 722 F.2d at 502).

In addition, according to Social Security Ruling ("SSR") 96-8p, a RFC assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton*, *supra*, 865 F.2d at 1356) (footnote omitted).

Therefore, the Court also concludes that for this reason, too, the ALJ erred by failing to specify why Dr. Coder's opinion regarding plaintiff's limitations with respect to adapting to routine changes is not included within plaintiff's RFC.

Finally, the Ninth Circuit has concluded that it was not harmless error for the ALJ to fail to discuss a medical opinion. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (*citing* 20 C.F.R. § 404.1527(c)). According to the Ninth Circuit, when the ALJ ignores significant and probative evidence in the record favorable to a claimant's position, such as an opinion from an examining or treating doctor, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *See id.* at 1161. Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *See id.* at 1162.

For this reason, based on the record, and because the ALJ's failure to include this limitation into plaintiff's RFC affected the ultimate disability determination, the Court concludes that the error is not harmless error. *See id.; see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted); *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule).

Regarding the opinion of examining doctor, Dr. Brett Trowbridge, Ph.D., the ALJ apparently fails to credit fully the opinions of Dr. Trowbridge regarding plaintiff's marked limitations in social factors (*see* AR. 305) based in part on a finding that they are

"extreme in light of her mini mental status examination" (AR. 44). However, although plaintiff scored 30/30 on her mini-MSE, the mini–MSE utilized by Dr. Trowbridge tested plaintiff's cognitive abilities, such as her orientation, attention, calculation, comprehension, reading and writing (*see* AR. 312–13). Indeed, Dr. Trowbridge indicated that plaintiff had mostly mild limitations with respect to her cognitive factors (*see* AR. 305). In contrast, Dr. Trowbridge opined that plaintiff suffered from marked limitations with respect to her social factors, for example, opining that plaintiff was markedly limited with respect to her ability to care for self, noting that this opinion was based on her obesity (*see* AR. 305). Similarly, Dr. Trowbridge opined that plaintiff suffered from marked limitations with respect to her ability to maintain appropriate behavior in a work setting, specifically indicating that this opinion was based on his observation that plaintiff was depressed and anxious (*see id.*). Furthermore, in contrast to the finding by the ALJ that "Dr. Trowbridge based his opinion heavily on the claimant's subjective symptoms reports" (AR. 44), this latter opinion by Dr. Trowbridge appears to be based, at least in part, on Dr. Trowbridge's direct observations, as he indicated in his opinion that he observed plaintiff's symptoms of depression and anxiety (*see* AR. 303).

For the reasons discussed, the Court does not find persuasive defendant's argument that the opinions of Dr. Trowbridge regarding plaintiff's marked social limitations are inconsistent with plaintiff's 30/30 on the mini–MSE, which tested plaintiff's cognitive limitations (*see* Dkt. 19, p. 13).

The Court's discussion of the March 11, 2010 opinion of Dr. Trowbridge, also discussed by the ALJ, equally is applicable to the September 30, 2010 opinion of Dr.

Trowbridge, which the ALJ did not appear to discuss at all (*see* AR. 319–35). This error, too, should be corrected by the ALJ following remand of this matter.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ failed to provide specific and legitimate reasons for failing to credit fully the opinions of Dr. Trowbridge. *See Lester*, *supra,* 81 F.3d at 830-31 (*citing Andrews*, *supra,* 53 F.3d at 1043; *Murray*, *supra,* 722 F.2d at 502).

Although the Court concludes that the ALJ erred in his evaluation of the medical evidence, it is not clear from the record that the ALJ would be required to find plaintiff disabled if the improperly discredited opinions or the opinions missing from the RFC were credited in full. There is no testimony from the vocational expert on the effect on employability with the limitation opined by Dr. Coder regarding adaptability to changes in routine, and there likewise is no testimony from the vocational expert as to whether or not a hypothetical individual with the social limitations opined by Dr. Trowbridge would be able to perform plaintiff's past relevant work or other work existing in the national economy. It is not clear from the record that plaintiff is in fact disabled. Therefore, this matter should be reversed and remanded for further consideration, not with a direction to award benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1021, 1023 (9th Cir. 2014).

(2) **Whether or not the ALJ gave legally adequate reasons for finding plaintiff not entirely credible**.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part

on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, for this reason, plaintiff's credibility should be assessed anew following remand of this matter.

(3) **Whether or not the ALJ harmfully erred in failing to adequately discuss plaintiff's obesity**.

Multiple examiners mentioned plaintiff's obesity in their treatment record or opinion (*see, e.g.*, AR. 305, 307 ("markedly obese"), 339). According to Social Security Ruling, "SSR," 02-01p, the Administration "consider[s] obesity to be a medically determinable impairment and remind[s] adjudicators to consider its effects when evaluation disability . . . . [ALJs are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." 2002 SSR LEXIS 1 at *2-*3 (2002). The ALJ should provide a more thorough discussion of plaintiff's obesity following remand of this matter.

(4) **Whether or not the ALJ presented a valid residual functional capacity ("RFC") assessment to the vocational expert ("VE").**

As discussed already by the Court, *see supra*, section 1, the ALJ's RFC presented in a hypothetical to the VE was incomplete. Therefore, the RFC must be determined anew following remand of this matter and following a proper evaluation of the medical evidence.

CONCLUSION

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42

U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 2, 2015, as noted in the caption.

Dated this 12th day of December, 2014.

J. Richard Creatura
United States Magistrate Judge